UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LAURA J. MOONEY,

                          Plaintiff,                        04-CV-0518C

            -vs-

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

---

Plaintiff Laura Mooney initiated this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. The Commissioner has filed a motion for judgment on the pleadings, and the plaintiff has cross-moved for the same relief pursuant to Fed. R. Civ. P. 12(c).

## BACKGROUND

Plaintiff was born on December 25, 1970 (T. 52).[1] She applied for disability insurance benefits on July 27, 2001, with an alleged disability onset date of February 6, 2001 (T. 52-54; 81). She alleges disability due to accumulative trauma disorder in her arms, wrists, and hands (T. 81). Plaintiff's application was denied initially on October 16, 2001 (T. 23-26). Plaintiff requested a hearing, which was held on January 21, 2004 before Administrative Law Judge ("ALJ") Bruce Mazzarella (T. 361-409). On March 17, 2004, the ALJ determined that plaintiff was not disabled and therefore entitled to neither a period of

---

[1] References preceded by "T." are to page numbers of the transcript of the administrative record filed by defendant as part of the answer to the complaint.

disability nor disability insurance benefits (T. 9-11). The decision of the ALJ became the Commissioner's final decision on June 3, 2004, when the Appeals Council declined plaintiff's request for review (T. 4-6). On July 19, 2004, plaintiff instituted this action seeking judicial review of the Commissioner's final determination. The Commissioner filed an answer on October 8, 2004. On February 7, 2005, the plaintiff moved for judgment on the pleadings, seeking an order reversing the ALJ's decision. In response, on February 7, 2005, the Commissioner filed a cross-motion for judgment on the pleadings, seeking an order affirming the ALJ's decision.

## DISCUSSION

### I.   Scope of Judicial Review

The Social Security Act states that, upon district court review of the Commissioner's decision, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *See Richardson*, 402 U.S. at 401. The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, 2000

WL 575513, at *2 (W.D.N.Y. February 14, 2000) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Gartmann v. Sec'y of Health & Human Servs.*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986) (quoting *Klofta v. Mathews*, 418 F.Supp. 1139, 1141 (E.D.Wis. 1976)). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d at 773.

## II.   Standards for Determining Eligibility for Disability Benefits

The regulations set forth a five-step process for the ALJ to follow in evaluating disability claims. *See* C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings"). If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing her past relevant work. If the claimant cannot perfrom her past relevant work, the fifth step

requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy considering the claimant's age, education, past work experience, and residual functional capacity based on a series of charts provided in the regulations at 20 C.F.R. § 404, Subpart P, Appendix 2 (the "Grids").  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined that plaintiff had not engaged in substantial gainful employment since the date of the alleged disability onset, February 6, 2001 (T. 19, 81). In reviewing plaintiff's medical records, the ALJ found that the plaintiff suffered from accumulative injury to both hands with mild carpal tunnel and mild epicondylitis.  The ALJ found these impairments to be severe for purposes of 20 C.F.R. § 404.1520(c) (T. 19). The ALJ further found, however, that plaintiff's impairments, individually or in combination, failed to meet or equal the requirements of the Listings.  Proceeding to the fourth step in the sequential evaluation process based on the medical records and the testimony of the vocational expert and plaintiff, the ALJ found that plaintiff retained a residual functional capacity for a significant range of sedentary work.  The ALJ found that plaintiff could sit for up to eight hours in an eight-hour work day and could stand and walk for up to eight hours in an eight-hour day.  Plaintiff could not however, engage in the repetitive use of her hands and arms or use any vibration tools.  Additionally, the ALJ determined that the plaintiff's

residual functional capacity precludes her from performing any of her past relevant work. Proceeding to the fifth step in the sequential evaluation process, the ALJ relied on the testimony of the vocational expert in determining that, notwithstanding plaintiff's exertional limitations, plaintiff could be gainfully employed in a significant number of jobs in the national economy, including employment as a telephone solicitor. Accordingly, the ALJ concluded that plaintiff was not disabled for purposes of the Social Security Act at any time since the alleged onset of her disability (T. 20).

The Commissioner contends that the ALJ's findings are supported by substantial evidence. Plaintiff contends that the ALJ, in finding plaintiff not disabled, misapplied the established legal and regulatory standards, and further contends that the decision was not supported by substantial evidence.

### III.   Medical Evidence

On September 7, 2000, plaintiff experienced pain in her right arm and wrist while attempting to staple papers (T. 290). Plaintiff then received treatment at United Memorial Medical Center in Batavia, New York. X-rays of plaintiff's right wrist were negative, and plaintiff was diagnosed as suffering from a right wrist sprain (T. 263, 149). In a follow-up appointment on September 13, 2000, Dr. Alan Barcomb noted that plaintiff experienced numbness in her fourth and fifth fingers on her right hand, but suffered no loss of motor or sensory abilities in her right arm (T. 195). Additional x-rays were performed on September 13, 2000, which indicated degenerative spurring of plaintiff's right ulnar/olecranoid region (T. 262). Dr. Barcomb diagnosed plaintiff as suffering from ulnar neuropathy. Dr. Barcomb noted that plaintiff could work, but should avoid twisting her arm

and lifting more than ten pounds (T. 195).  By October 25, 2000, Dr. Barcomb noted that plaintiff was no longer restricted in her work capacity (T. 196).

On January 4, 2001, plaintiff saw orthopedist Dr. Matthew Landfried.  Plaintiff reported that the initial pain and tingling that she was experiencing in her right arm from the elbow to the ulnar fingers had improved, but that she continued to have intermittent pain, numbness, and tingling in the remaining fingers, particularly at nighttime (T. 211).  On January 20, 2001, plaintiff had electrodiagnostic testing performed to rule out any sign of impingement.  The results of the tests were essentially normal (T. 293).  On March 2, 2001, plaintiff reported no relief from treatments.  Dr. Landfried observed that plaintiff appeared to suffer from accumulative trauma syndrome and carpal tunnel syndrome, and referred plaintiff for a second opinion from hand surgeon Dr. James Kelly (T. 285-86).

On May 7, 2001, Dr. Richard DellaPorta examined plaintiff at the request of the Workers' Compensation Board (T. 214).  Dr. DellaPorta noted that, except for the left small and ring fingers, plaintiff had normal sensation to light touch.  Plaintiff showed full range of motion in both shoulders, elbows, and fingers.  Both wrists were tender and were positive for Phelan's test (T. 215).  Dr. DellaPorta opined that plaintiff suffered from a moderate partial disability in both upper extremities.  Dr. DellaPorta advised plaintiff against work involving repetitive motion of her hands and lifting more than twenty pounds (T. 216).

On May 22, 2001, plaintiff was examined by Dr. Kelly.  Plaintiff complained of tingling parasthesias in all fingers of both hands, and claimed that treatments had provided no relief.  Plaintiff showed no signs of sensory or motor deficits, but exhibited evidence of flexor tendinitis, which could mimic the symptoms of carpal tunnel syndrome, radial tunnel irritation in the right forearm, and "tennis elbow" (T. 304).  Dr. Kelly requested that an MRI

of plaintiff's right wrist be performed and that plaintiff begin physical therapy (T. 304). Dr. Kelly recommended that plaintiff should continue on total disability for the time being (T. 305). The MRI, performed on June 28, 2001, showed no signs of median nerve compression (T. 307).

On July 10, 2001, after seeing plaintiff again, Dr. Kelly concluded that he could not diagnose plaintiff with carpal tunnel syndrome. Dr. Kelly noted that plaintiff had evidence of flexor tendon irritation, extensor tendon irritation, and ulnar neuritis in the medial elbow. Dr. Kelly finally indicated that he had no further treatment that he could provide to plaintiff (T. 301).

On July 23, 2001, plaintiff underwent a functional capacity evaluation. Plaintiff's range of motion was within normal limits (T. 296). Testing determined that plaintiff could continuously lift eight pounds bilaterally, six pounds with the right arm, and seven pounds with the left arm. Plaintiff could lift and carry continuously fifteen pounds bilaterally, eleven pounds with the right arm, and thirteen pounds with the left arm. Plaintiff could continuously lift floor-to-waist seven pounds, waist-to-overhead six pounds, and horizontally six pounds (T. 297). Other significant findings from the evaluation were decreased bilateral grip/pinch strength, decreased left pinch endurance, and increased pain reported by plaintiff twenty-four hours post-testing (T. 298).

On August 1, 2001, plaintiff returned to Dr. Kelly for re-examination. Plaintiff had diffuse tenderness in both arms, wrists, and hands. The carpal tunnel compression test and Phalen's test were positive in both wrists, and Tinel's test was equivocally positive in both wrists. Dr. Kelly referred plaintiff to the vocational rehabilitation ("VESID") program.

Dr. Kelly noted that plaintiff could resume work, but within the limitations for lifting and carrying established by the functional capacity evaluation (T. 347-48).

On September 22, 2001, plaintiff was examined by Dr. Chandre Gowda. Plaintiff complained of dull to moderate bilateral hand and elbow pain, which increased with the lifting of objects and repeated hand movements (T. 311). Range of motion in plaintiff's upper extremities was normal. Plaintiff showed no neurological deficits, and had 5/5 motor strength bilaterally. Dr. Gowda diagnosed flexor tendinitis of both elbows. Dr. Gowda opined that plaintiff should avoid repeated typing work or lifting more than 10 to 15 pounds with her hands (T. 312).

On March 20, 2002, Dr. Landfried opined that plaintiff could not engage in any activity involving plaintiff's upper extremities. Dr. Landfried believed that plaintiff's condition required daily rest to manage plaintiff's symptoms.

**IV.   Other Evidence**

Plaintiff is able to drive, although she attempts to limit any driving to distances of less than five miles (T. 369). Plaintiff has an associate's degree in business (T. 374). Plaintiff is able to care for her 16-month-old, 32-pound son. Her abilities include lifting and carrying him, feeding him, and changing his diapers (T. 388-89). Plaintiff does some small household activities, including light housework. Plaintiff is able to do some light shopping and cooking (T. 103). Plaintiff is able to adequately attend to her personal needs (T. 390). Plaintiff has no difficulty sitting or standing (T. 391).

**V.     Plaintiff's Residual Functional Capacity**

Plaintiff contends that when the ALJ determined plaintiff's residual functional capacity, he failed to consider whether plaintiff could perform work on a regular and continuing basis, notwithstanding plaintiff's ability to perform work as an initial matter. Two days following the functional capacity evaluation, plaintiff reported severe, debilitating pain (T. 298). Based upon plaintiff's report, the functional capacity evaluator opined that plaintiff was not appropriate for a work conditioning program and therefore unable to return to work (T. 299). Accordingly, plaintiff contends that the ALJ failed to follow the established guidelines laid out by the regulations when determining a person's RFC.

In his decision, the ALJ discussed plaintiff's reports of increased pain following the functional capacity evaluation (T. 15). This suggests that the ALJ was aware of, and at least gave consideration to, evidence which would support a finding that plaintiff was unable to work on a regular and continuing basis. There is nothing in the decision which suggests that the ALJ failed to appreciate that the ability to perform work on a continuing and regular basis is inherent in the definition of a person's RFC. Therefore, the ALJ correctly followed the legal standards required in performing plaintiff's RFC assessment.

**A.     Substantial Evidence**

The ALJ's decision must not simply comport with established legal standards, but furthermore must be supported by substantial evidence in the record. There is evidence that suggests plaintiff was unable to work on a continuing and regular basis and, as such, was totally disabled. However, there is also evidence that suggests plaintiff was not disabled. The dispositive inquiry on review is not whether substantial evidence supports

9

a finding that plaintiff was disabled but, rather, whether substantial evidence supports the ALJ's finding that plaintiff was not disabled. *See, e.g.*, *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (Commissioner's decision affirmed where substantial evidence exists for both sides). The ALJ's duty in assessing plaintiff's RFC was to consider the record in its entirety, including the objective medical facts, diagnoses, or medical opinions inferable from these facts, subjective complaints of pain or disability, and educational background, age, and work experience. *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983).

In this case, the record contains objective medical evidence showing that plaintiff was not entirely disabled in her upper extremities. A number of tests, including x-rays, nerve conduction studies, and an MRI showed essentially normal results (T. 263, 293, 307). Furthermore, various treating sources opined that plaintiff, while suffering from some trauma, was not completely disabled. Dr. Kelly opined that plaintiff could probably not return to her past work as a clerk/typist, but could perform other limited work duties with restrictions in lifting and carrying (T. 347-48). Dr. Gowda opined that plaintiff should avoid only repetitious movements involving the hands and lifting certain amounts (T. 315). Dr. DellaPorta advised plaintiff similarly (T. 216). These opinions all support the ALJ's ultimate determination that plaintiff maintained a functional capacity for work, notwithstanding some limited use of plaintiff's upper extremities.

**B.     Allegations of Pain**

Plaintiff contends that the ALJ failed to give due consideration to the functional capacity evaluator's opinion that plaintiff was unable to participate in a work conditioning program. The evaluator's assessment was based on plaintiff's subjective reports of severe pain 24 hours post-functional capacity evaluation. Ultimately, the ALJ found that plaintiff's subjective allegations of disabling pain were not entirely credible. When an ALJ discredits hearing testimony, he or she must articulate the reasons for doing so "with sufficient specificity to permit intelligible plenary review of the record." *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir. 1988).

When the alleged symptoms suggest greater severity of impairment than the objective medical evidence alone, the ALJ considers all the evidence submitted, and considers "the extent to which there are any conflicts between [claimant's] statements and the rest of the evidence . . . ." 20 C.F.R. § 404.1529(c)(4). The ALJ will also consider other factors, such as daily activities, the location, duration, frequency, and intensity of symptoms, the type, effectiveness, and side effects of medication, and other treatment or measures taken to relieve those symptoms. *See* 20 C.F.R. § 416.929(c)(3); Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996).

The ALJ specifically noted that plaintiff is able to lift and care for her child. Plaintiff also testified to being able to engage in light shopping, cooking, light cleaning and some driving. Under the regulations, the ALJ had a duty to consider factors other than simply daily activity when determining plaintiff's credibility. The ALJ satisfied this duty by discussing any treatments or measures taken by plaintiff to relieve pain. The ALJ noted

that plaintiff wore no braces, splints, or assistive devices, and produced a full bottle of Celebrex that had an expired date. The ALJ also found that plaintiff's demeanor at the hearing lent support to a finding that plaintiff's allegations of disabling pain were not entirely credible (T. 17). Accordingly, the ALJ did not err in discrediting plaintiff's allegations of pain and its associated disabling nature.

Plaintiff further contends that the ALJ improperly equated plaintiff's ability to engage in some daily activity with an ability to perform sedentary work. Case law is clear that the two abilities are distinct. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (daily activities may be used to show that a claimant can work, but only insofar as there is evidence the claimant engaged in the activities for "sustained periods comparable to those required to hold a sedentary job" (internal quotation and citation omitted)). Plaintiff contends that she is unable to perform any activity for a sustained period of time without an exacerbation of pain to an intolerable level.

However, plaintiff testified that most of the pain she experiences in handling things is temporary and, once the aggravating activity ceases, the pain subsides almost immediately (T. 392). This evidence supports the ALJ's RFC assessment that plaintiff can engage in work, as long as the work does not require repetitive and continuous movements of the upper extremities. There is substantial evidence in the record to support the ALJ's determination that plaintiff could perform work that required periodic use of the upper extremities. Additionally, the evidence shows that plaintiff engages in daily activities on a regular and continuing daily basis. There is no evidence that plaintiff needed entire days off between periods of activity, wherein her upper extremities are not used, in order to function.

Given the evidence, the ALJ properly concluded that plaintiff's periodic use of her upper extremities in performing various daily activities is neither more nor less sustained than that which might be required by certain types of work. Accordingly, I find no error in the ALJ's consideration of evidence of plaintiff's daily activities to support the finding of non-disability.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's cross-motion is denied.

So ordered.

_____\s\ John T. Curtin_
JOHN T. CURTIN
United States District Judge

Dated: ~~August~~ 9/1/2006
p:\opinions\04-518.aug1606